UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

**STEPHEN EARL CHURCH,**

        Plaintiff,

    v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

        Defendant.

Case No. 6:14-cv-01373-ST

**OPINION AND ORDER**

**STEWART, Magistrate Judge:**

## INTRODUCTION

Plaintiff, Stephen Earl Church ("Church"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 USC §§ 401–33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 USC § 405(g) and § 1383(c)(3). The Commissioner concedes reversible error and requests a remand for additional administrative proceedings. Church opposes additional administrative proceedings and seeks a remand for an award of benefits. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this

1 – OPINION AND ORDER

case in accordance with FRCP 73 and 28 USC § 636(c).  For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for an immediate award of benefits.

## ADMINISTRATIVE HISTORY

Church protectively filed for DIB on May 24, 2011[1], alleging a disability onset date of December 19, 2006.  Tr. 116–17, 175–78.[2]  His application was denied initially and on reconsideration.  Tr. 118–21, 123–26.  On January 15, 2013, a hearing was held before Administrative Law Judge ("ALJ") Riley J. Atkins.  Tr. 43–66.  The ALJ issued a decision on January 29, 2013, finding Church not disabled.  Tr. 21–41.  The Appeals Council considered additional evidence and denied a request for review on July 9, 2014.  Tr. 1–6.  Therefore, the ALJ's decision is the Commissioner's final decision subject to review by this court.  20 CFR § 404.981, 422.210.

## BACKGROUND

Born in 1951 (Tr. 175), Church was 61 years old at the time of the hearing before the ALJ.  He received a high school education and has past relevant work experience as a janitor, painter, and groundskeeper.  Tr. 80.  Church alleges that he is unable to work due to the combined impairments of a learning disability, thyroid disorder, low bone density, hiatal hernia, and right knee injury.  Tr. 194.

///

///

---

[1] Church also filed applications on April 14, 2010 and October 25, 2010, which were denied.  Tr. 67–113.  At the disability hearing, Church's attorney explained that the October 25, 2010 application was an attempt to refile the April 14, 2010 application.  Tr. 47.  Church's request for reconsideration was dismissed as untimely filed (Tr. 186), requiring him to file a new claim.  Tr. 188.
[2] Citations are to the page(s) indicated in the official transcript of the record filed on December 29, 2014 (docket #9).

**ALJ'S FINDINGS**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR § 404.1520; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

At step one, the ALJ concluded that Church has not engaged in substantial gainful activity during the period from his alleged onset date of December 19, 2006, through his date last insured of June 30, 2012. Tr. 26.

At step two, the ALJ determined that Church has the severe impairments of borderline intellectual functioning, anxiety disorder, and dysthymic disorder. *Id*.

At step three, the ALJ concluded that Church does not have an impairment or combination of impairments that meets or equals any of the listed impairments. Tr. 28. The ALJ found that Church has the RFC to perform a full range of work with the following nonexertional limitations: only "work of a simple, routine, repetitive nature" that does not require "competency or fluency of written expression." Tr. 30.

Based upon the testimony of a vocational expert ("VE"), the ALJ determined at step four that Church was capable of performing his past relevant work as a janitor or groundskeeper. Tr. 36.

Accordingly, the ALJ determined that Church was not disabled at any time from December 19, 2006, the alleged onset date, through June 30, 2012, the date last insured. Tr. 37.

**DISCUSSION**

Church argues that the ALJ erred in finding that he did not meet the requirements of Listing 12.05C and by adopting VE testimony that did not accurately describe his past relevant work. The Commissioner concedes the ALJ erred in both respects, but argues that the record does not contain sufficient evidence that Church meets Listing 12.05C and that additional administrative proceedings are required to further develop the record.

A claimant is presumptively disabled and entitled to benefits if he or she meets or equals a listed impairment. To "meet" a listed impairment, a disability claimant must establish that his condition satisfies each element of the listed impairment in question. *Sullivan v. Zebley*, 493 US 521, 530 (1990); *Tackett*, 180 F3d at 1099. To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the most similar listed impairment. *Tackett*, 180 F3d at 1099-1100, quoting 20 CFR § 404.1526.

Listing 12.05 provides in relevant part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. . .

Although the introductory paragraph is a diagnostic description for intellectual disability, rather than a specific criterion, it functions as a substantive requirement. *See* Listing 12.00(A)

("If your impairment satisfies the diagnostic description in the introductory paragraph [of Listing 12.05] and any one of the four sets of criteria, we will find that your impairments meets the listing."); *Kennedy v. Colvin*, 738 F3d 1172, 1176 (9th Cir 2013). In other words, the introductory paragraph (prong one) establishes that a qualifying intellectual disability exists, and the criteria within "C" (prongs two and three) establish its severity. "Thus, Listing 12.05C has three main components: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation." *Kennedy*, 738 F3d at 1176.

The Commissioner concedes that the second and third prongs[3] are met in this case and that the only issue is whether the record contains substantial evidence to establish that Church experienced deficits in adaptive functioning prior to age 22. Although the ALJ discussed whether Church met the criteria of Listing 12.05C, he did not make a finding regarding the first prong of the analysis. Tr. 30.

Listing 12.05C does not require a diagnosis or medical finding of mental retardation prior to age 22, but relies instead on valid IQ scores in conjunction with other circumstantial evidence, such as "attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history." *Pedro v. Astrue*, 849 F Supp2d 1006, 1011–12 (D Or 2011) (citations omitted). Church argues that he satisfies the first prong of Listing 12.05C based on his IQ scores within the relevant range (Tr. 325), a history of attending special education classes (Tr. 53, 322, 350), and a

---

[3] The Commissioner revised the regulations in 2000 to clarify that additional impairments defined as "severe" in 20 CFR USC §§ 404.1502(c) and 416.920(c) satisfy the third prong of Listing 12.05C. "We always have intended the phrase to mean that the other impairment is a 'severe' impairment as defined in §§ 404.1520(c) and 416.920(c)." *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed Reg 50746, 50772 (Aug. 21, 2000).

5 – OPINION AND ORDER

work history of inconsistent employment and low earnings. Tr. 181. The Commissioner contends that a remand is necessary for further development on the issues of the validity of Church's claim that he attended special education classes.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F3d 1172, 1179 (9th Cir 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F3d 587, 593 (9th Cir 2004). The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F3d at 1178.

As the ALJ acknowledged, the record includes an Intellectual Assessment by Ben Kessler, Psy.D., in 2010 showing that Church has a full-scale IQ range of 60–70. Tr. 30, citing Tr. 325. However, Listing 12.05C requires that Church had a qualifying intellectual disability of the severity indicated by that low IQ score before the age of 22.

Some circuits have credited low IQ scores after age 22 as presumptively proving that the intellectual disability manifested itself prior to age 22. *See Hodges v. Barnhart*, 276 F3d 1265, 1268 (11th Cir 2001) (IQ scores after age 22 satisfy the listing criteria and "create a rebuttable presumption of a fairly constant IQ throughout life"); *Muncy v. Apfel*, 247 F3d 728, 734 (8th Cir 2001) ("Mental retardation is not normally a condition that improves as an affected person ages. . . . . Rather, a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning"); *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F2d 666, 668-69 (4th Cir 1989). Other circuits have been reluctant to adopt a *per se* presumption and require some evidence that the onset

preceded age 22. *Markle v. Barnhart*, 324 F3d 182, 188-89 (3rd Cir 2003); *Foster v. Halter*, 279 F3d 348, 354–55 (6th Cir 2001).

The Ninth Circuit has not considered whether or adopt this rebuttable presumption. *Fatheree v. Colvin*, No. 1:13-CV-01577-SKO, 2015 WL 1201669, at *11 (ED Cal Mar. 16, 2015). Nonetheless, district courts in the Ninth Circuit, including this court, have applied the presumption. *See Robinson v. Comm'r of Soc. Sec.*, No. 2:14-cv-0051-KJN, 2015 WL 925609, at *4 (ED Cal Mar. 2, 2015) (collecting cases adopting rebuttable presumption); *see also Brooks v. Astrue*, No. 3:11-CV-01252-SI, 2012 WL 4739533, at *6 (D Or Oct. 3, 2012) (collecting District of Oregon cases). *But see Clark v. Astrue*, 2012 WL 423635, at *5–6 (ED Cal Feb. 8, 2012) (declining to adopt rebuttable presumption, "especially in a situation where there are glaring discrepancies in the IQ scores in the first place"); *Rhein v. Astrue*, 2010 WL 4877796, at *8 (ED Cal Nov. 23, 2010) (declining to adopt rebuttable presumption on grounds it would remove plaintiff's burden at Step Three).

This court finds those cases applying the rebuttable presumption persuasive. The presumption is particularly persuasive in this case given substantial evidence in the record that Church required special education from fifth grade until he completed the twelfth grade. As summarized by Dr. Kessler:

> [Church] stated that his education was very poor and that instructors did not ensure that he had learned material before moving on to new material or passing him to another grade. . . . When asked about grades he states that he earned C's and D's to the best of his recollection but that he is not 100% sure about this and related that they just gave him his grades to pass him on to the next grade.

Tr. 322.

Church testified to having continued difficulty reading and writing and requiring a tutor and testing accommodations when he pursued a certificate in supervision from Linn Benton

7 – OPINION AND ORDER

Community College. Tr. 53-54, 355. His attempts to join the military were unsuccessful because he could not pass the tests, despite four or five attempts. Tr. 323. Furthermore, Church's attorney reported in a letter to SSA that Church has "limited academic capacities" and "has problems with paperwork." Tr. 189.

Although the ALJ found Church "not fully credible" (Tr. 34) which Church does not challenge, the ALJ did not specifically evaluate Church's statements regarding his intellectual deficits. More importantly, the report from Church's older sister, Annelle Church Price, attests that he has suffered from intellectual deficits throughout his life. Tr. 297-98. Being close in age, she was in the same classroom as Church in the first and second grades and lived at home with him until graduation from high school. Tr. 297. She states that Church's IQ was tested in early elementary school and determined to be "low" and that he was placed in special education for the "rest of his school career." *Id*. She also states that Church has always requested help with "reading and completion of any official forms," but could "read the newspaper sports section with great difficulty but enough to get the information he wanted." Tr. 297-98. Their mother believed that he has suffered brain damage at birth. Tr. 298.

Ms. Price's report was submitted to the Appeals Council and not available to the ALJ. However, when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record and must be considered by this court when reviewing the Commissioner's final decision for substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F3d 1157, 1162 (9th Cir 2012). This report is based on personal observations over a long period of time and fully corroborates Church's claims of attending special education classes during the majority of his early education.

The only inconsistent evidence in the record of Church's early education experience is the answer "no" on Form SSA 3368 (Disability Report) to the question "Did you attend special education classes?" Tr. 195. But it is not clear who filled out that form since the Function Report states that Church "does not have the literacy skills to have done this form alone. Questions were read to him and written down for him." Tr. 207. Accordingly, that evidence is entitled to little weight and does not rebut the presumption that Church's intellectual disability was manifested prior to age 22. Because Church meets the criteria of Listing 12.05C, this case must be remanded for an award of immediate benefits.

Another issue is the period for which benefits may be awarded. Church's alleged disability onset date in his recent application, December 19, 2006, is the same as the date in his first set of applications. Tr. 67, 87, 175. Normally, the doctrine of *res judicata* forecloses a claimant from asserting a disability that falls within the previously adjudicated period. However, "[r]es judicata does not apply when an ALJ later considers 'on the merits' whether the claimant was disabled during an already-adjudicated period" and, thus, *de facto* reopens the prior adjudication. *Lewis v. Apfel*, 236 F3d 503, 510 (9th Cir 2001); *see also Lester v. Chater*, 81 F3d 821, 827 (9th Cir 1995) (*as amended* Apr. 9, 1996).

Church argues that any benefits awarded on remand should be based on all his applications, including his first set of applications, because the ALJ considered the merits of the earlier applications in his opinion. The ALJ stated that Church "filed prior applications for a period of disability insurance benefits on April 14, 2010 and October 25, 2010. These applications were denied. They have been considered in this decision." Tr. 24. The ALJ's use of the word "considered" is not as ambiguous as the Commissioner contends. The ALJ accepted the alleged onset date of December 19, 2006, and considered evidence of disability from as early

as 2006. Tr. 24, 41. Therefore, it is appropriate to treat the ALJ's consideration as a *de facto* reopening of the prior adjudications and to assume a disability onset date of December 19, 2006, as did the ALJ.

## **ORDER**

For the reasons discussed above, the Commissioner's decision is REVERSED and REMANDED pursuant to Sentence Four of 42 USC § 405(g) for an immediate award of benefits with a disability onset date of December 19, 2006.

DATED December 9, 2015.

s/ Janice M. Stewart<br>
Janice M. Stewart<br>
United States Magistrate Judge